IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Levi Bing, Jr., #308051, | ) | Civil Action No.: 2:09-cv-01759-RBH |
| Petitioner, | ) ) ) | |
| v. | ) ) | **ORDER** |
| Anthony Padula, Warden, Lee Correctional, | ) ) ) ) | |
| Respondent. | ) ) | |

This matter is before the Court after the issuance of the Report and Recommendation ("R&R") of United States Magistrate Judge Robert S. Carr.[1] In the R&R, the Magistrate Judge recommends that the Court grant the Respondent's Motion for Summary Judgment [Docket #16].

I.

**Procedural History and Factual Background**

In the instant *pro se*[2] Petition for writ of habeas corpus, the Petitioner made the following allegation as to why he is being held in custody unlawfully:

> **Ground One:** I received ineffective assistance of counsel prior to and during my guilty pleas in violation of my Sixth and Fourteenth Amendment rights. My plea was involuntary because of it.
>
> Supporting Facts: My lawyer told me if I plead guilty to murder I would be eligible for parole. I never would have plead to my charges if he hadn't promised me I could have a chance to get parole. I would have gone to trial which is what I really wanted to begin with. He promised me and my family I would have a parole

---

[1] In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02 (D.S.C.), this matter was referred to United States Magistrate Judge Robert S. Carr for pretrial handling.

[2] The Petitioner's attorney noticed her appearance in this matter on July 27, 2009.

> date and I did not find out I don't till I got to SCDC. Lawyer admitted he thought I was parole eligible at my PCR hearing.

This matter was initiated on July 1, 2009. On October 8, 2009, the Respondent filed a Motion for Summary Judgment. Subsequently, the Petitioner filed a Response in Opposition. The Magistrate Judge issued an R&R on February 23, 2010, in which he recommends that the Court grant summary judgment in favor of the Respondent. On March 11, 2010, the Petitioner filed timely objections to the R&R.

The following is a summary of the facts giving rise to this matter. The Petitioner was charged with murder and other charges stemming from the death of Randy Bills in Holly Hill, South Carolina, on November 10, 2003. The Petitioner ultimately pleaded guilty to the charges for a negotiated forty-year sentence. *See* PCR App. pp. 1-23. He did not appeal his conviction or sentence. On March 7, 2006, he filed an application for post-conviction relief ("PCR"), alleging (1) ineffective assistance of counsel (no specifications), and (2) involuntary guilty plea (no specifications).

During his PCR hearing, the Petitioner did not raise the parole eligibility issue at all during his initial testimony. Only after direct and cross-examination of his trial counsels did the Petitioner testify for the first time that he had been advised that he would be eligible for parole:

Q: Mr. Bing, what is your sentence for the murder of the gentlemen we've been talking about today? What is your sentence? What did the Court sentence you?
A: Forty years day-for-day, mandatory.
Q: What was your understanding before you received that sentence from your attorneys?
A: That I would have been eligible for a parole date.
Q: And have you been told differently?
A: Yes, ma'am.
Q: What have you been told now?
A: That I will have to do 40 years day-for-day.
Q: Okay. And—
A: One hundred percent.

2

Q: Had you known that at an earlier time, at the time that you took your plea, would that have made a difference?
A: Yes, ma'am.
Q: Do you feel that your attorneys misled you, as far as that statement's concerned?
A: Yes ma'am.
Q: Okay. And have you been harmed by those statements?
A: Yes, ma'am.

PCR App. pp. 156-57. Further, upon examination by the PCR judge, the Petitioner stated that counsel told him that he would only have to serve 85% of his sentence prior to being released from prison. *Id.* at 159. On September 7, 2007, Judge Goodstein entered a written Order of Dismissal, which provided in pertinent part:

> The allegation that the Applicant's guilty plea was rendered involuntary as the result of ineffective assistance of counsel is without merit. This Court finds that every aspect of the Applicant's testimony regarding the deficiencies of his counsels' representation was not credible.
> 
> \*\*\*
> 
> This Court finds that Applicant's testimony was not credible. Further, this Court finds that plea counsels' testimony was credible and this Court affords it great weight. This Court finds that the transcript and counsels' testimony shows that the Applicant understood the consequences of a guilty plea, his Constitutional rights, and the possible sentences . . . . Therefore, the Applicant's guilty plea was not rendered involuntary as a result of the ineffective assistance of counsel.

PCR App. pp. 181-83 (emphasis added).

On appeal to the South Carolina Supreme Court, the Petitioner's appellate counsel filed a no-merit brief pursuant to *Johnson v. State,* 364 S.E.2d 201 (S.C. 1988), and argued that the Petitioner did not knowingly and voluntarily waive his right to a direct appeal. In accordance with the *Johnson* procedure, the Petitioner filed a *pro se* brief, arguing that plea counsel was ineffective "for advising petitioner with incorrect parole eligibility that induced involuntary plea." *Pro Se Petition,* p.4. The court denied both petitions and dismissed the PCR appeal: "After

3

careful consideration of the entire record as required by Johnson v. State, 294 S.C. 310, 364 S.E.2d 201 (1988), we deny the petition and grant counsel's request to withdraw." *State v. Bing*, S.C. Sup. Ct. Order (June 10, 2009). This Court now addresses the Petitioner's habeas petition.

II.

### Standard of Review

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court is charged with making a *de novo* determination of those portions of the R&R to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a *de novo* review when a party makes only general and conclusory objections that do not direct the Court to a specific error in the Magistrate Judge's proposed findings and recommendations. *Orpiano v. Johnson*, 687 F.2d 44, 47-48 (4th Cir. 1982). In the absence of a timely filed specific objection, the Magistrate Judge's conclusions are reviewed only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

*The Antiterrorism and Effective Death Penalty Act of 1996*

The Court's review of collateral attacks on state criminal convictions is governed by the parameters set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a federal court may only grant habeas corpus relief under Section 2254(d)

4

with respect to a claim adjudicated on its merits in a state court proceeding if that state court's adjudication: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Frazer v. South Carolina*, 430 F.3d 696, 703 (4th Cir. 2005).

The proper analysis for establishing whether there exists an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding" is framed by Section 2254(e)(1), which provides that the findings of fact by a state court are entitled to a "presumption of correctness," and the petitioner must bear the burden of rebutting that presumption by "clear and convincing evidence." *See* 28 U.S.C. § 2254(e)(1). As such, federal courts must accord "considerable deference in their review of state habeas proceedings." *Lovitt v. True*, 403 F.3d 171, 178 (4th Cir. 2005) (citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).

III.

## Discussion

In his habeas petition, the Petitioner contends that he received ineffective assistance of counsel and entered into an involuntary guilty plea because his counsel misadvised him that he would be eligible for parole. The R&R recommends granting summary judgment in favor of the Respondent on the basis that the Petitioner procedurally defaulted on his claim in state court. Specifically, the Magistrate Judge finds that the claim at issue here was not present in the Petitioner's application for PCR and not included in the PCR court's Order of Dismissal. Thus, the Magistrate Judge finds that the Petitioner was precluded from appealing this issue to the South

5

Carolina Supreme Court. The Petitioner objects on three grounds: the Petitioner argues that (1) this issue was brought before the PCR court and addressed in the PCR court's Order of Dismissal; (2) even if the issue was not directly addressed in the PCR court's Order of Dismissal, the Magistrate Judge misapplied the law of procedural default in contradiction to clear precedent set forth by the United States Supreme Court; and (3) the Magistrate Judge failed to address his substantive claim of ineffective assistance of counsel.

Fundamentally, there are two types of default in the habeas context: (1) failure to exhaust state remedies ("default by exhaustion"); and (2) dismissal of a habeas claim in state court based on an independent and adequate state ground ("default by an independent and adequate state ground").

*Default by Exhaustion*

Absent a valid excuse, a state prisoner must exhaust his remedies in state court before seeking federal habeas corpus relief. *See* 28 U.S.C. § 2254(b)(1). "To exhaust state remedies, the petitioner must fairly present the substance of his claim to the state's highest court." *Burket v. Angelone*, 208 F.3d 172, 183 n.11 (4th Cir. 2000). This requirement has two components: (1) presentation of the same claim, and (2) presentation to all appropriate courts. To satisfy the fair presentation requirement, a petitioner must present "the substance of [the] claims" during state proceedings. *George v. Angelone*, 100 F.3d 353, 362 n.10 (4th Cir. 1996); *see Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) ("[B]oth the operative facts and the controlling legal principles must be presented to the state court.") (internal quotation marks omitted). If a claim has been addressed by the state's highest court on either direct or collateral review, it is exhausted, regardless of whether the claim was raised in prior or subsequent state proceedings. *See*

*O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). Moreover, a claim that has been fairly presented to all appropriate state courts is exhausted regardless of whether the state courts actually address the issue. *See Smith v. Digmon,* 434 U.S. 332, 333-34 (1978) (per curiam).

*Default by an Independent and Adequate State Ground*

A federal court ordinarily will not review a claim that is procedurally defaulted. *See Fisher v. Angelone,* 163 F.3d 835, 844 (4th Cir. 1998). To determine whether a claim that was raised in state court is procedurally defaulted, a federal court must answer three questions: (1) What is the rule of procedure that would potentially bar the claim from consideration by the state court; (2) Is the rule one that may be deemed adequate and independent; and (3) Was the rule actually relied upon by the state court? *Thomas v. Davis,* 192 F.3d 445, 450 (4th Cir. 1999). The doctrine of default by an independent and adequate state ground "applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman v. Thompson,* 501 U.S. 722, 729-30 (1991).

In the instant matter, the state procedural rule that presumably would operate as a bar to the Petitioner's claim is that a "PCR judge must make specific findings of fact and state expressly the conclusions of law relating to each issue presented" or appellate review of the issues may be precluded. *Marlar v. State,* 653 S.E.2d 266, 266 (S.C. 2007) (citing S.C. Code Ann. § 17-27-80 (2003)). If the PCR claims are not specifically addressed by the PCR court's order, "a Rule 59(e) motion must be filed . . . in order to preserve the issues for appellate review." *Id.* at 267. It appears as though the Petitioner's claim regarding parole eligibility misinformation is procedurally barred because it was not raised in his initial or amended PCR applications, and also he did not file a Rule 59(e) motion after the PCR judge did not specifically rule on it. The Petitioner argues

7

that the claim was presented to the PCR court and that the PCR judge did specifically rule on it. However, even assuming, *arguendo*, that this were true, and the claim was exhausted and it is not procedurally barred, the claim still fails on the merits.

IV.

In his habeas petition, the Petitioner claims he received ineffective assistance of counsel and entered into an involuntary guilty plea because his counsel misadvised him that he would be eligible for parole. A guilty plea is a solemn, judicial admission of the truth of the charges against an individual; thus, a criminal inmate's right to contest the validity of such a plea is usually foreclosed. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Therefore, statements made during a guilty plea should be considered conclusive unless a criminal inmate presents valid reasons why he should be allowed to depart from the truth of his statements. *See Edmonds v. Lewis*, 546 F.2d 566 (4th Cir. 1976). A petitioner may attack the voluntary, knowing, and intelligent character of a guilty plea entered on the advice of counsel by demonstrating that (1) counsel's representation was below an objective standard of reasonableness and (2) the deficient performance prejudiced the petitioner's case. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984) (stating to show ineffective assistance of counsel, the petitioner must show that his counsel's performance was both objectively unreasonable and prejudicial to his defense). The "prejudice" requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). As such, the petitioner must prove prejudice by showing that, but for counsel's inadequacy, there is a reasonable probability he would not have pleaded guilty and, instead, would have insisted on going to trial. *Id.*

A petitioner's knowing and voluntary waiver of statutory or constitutional rights must be established by a complete record, and "may be accomplished by colloquy between court and defendant, between court and defendant's counsel, or both." *State v. Ray*, 310 S.C. 431, 437 (1993); *see, e.g., Wolfe v. State*, 326 S.C. 158 (1997) (guilty plea not involuntary where the colloquy demonstrated the trial judge asked defendant twice whether he understood there were no promises and that no sentencing recommendations were binding on the judge). "When determining issues relating to guilty pleas, this Court will consider the entire record, including the transcript of the guilty plea and the evidence presented at the PCR hearing." *Roddy v. State*, 339 S.C. 29, 33-34 (2000).

In the instant matter, the transcript of the guilty plea reveals that the Petitioner's claim is meritless. The record reveals a negotiated plea of forty (40) years on murder, and the charges would run concurrently as a result of the State no longer seeking the death penalty. PCR App. pp.2-3, 8. At the time of the guilty plea, the Petitioner confirmed the State's version of the facts and that he was pleading guilty because he was guilty. *Id.* at 12-13. Significantly, the following exchange occurred between the state judge receiving the plea and the Petitioner:

> COURT: Sir, I want to explain to you that you may have discussed parole or parole eligibility with your lawyer or with other people, but until you're sentenced no one can tell you when, if ever, you will be eligible for parole or under what conditions. ***You should assume that you will serve the entire time in jail that you're sentenced to.*** Do you understand that?
>
> BING: Yes, sir.

*Id.* at 8.

Moreover, a review of the Petitioner's application for PCR does not reveal his alleged claim that incorrect advice concerning parole eligibility caused ineffective assistance of counsel

9

and an involuntary guilty plea. Instead, it merely raises "ineffective assistance of counsel" without indicating what portion of his lawyers' representation he was challenging. Additionally, the Petitioner wrote to his lawyer prior to the PCR hearing and advised her that he wanted to amend his PCR application. That letter was admitted at the PCR hearing as Exhibit 1 without opposition, but even it did not assert that the Petitioner's plea was involuntary as a result of his lawyers' ineffectiveness in allegedly telling him he would be eligible for parole. PCR App. pp.162, 164-77.

In his initial testimony at the PCR hearing, the Petitioner similarly makes no mention or assertion that he was misadvised about parole eligibility by counsel prior to the plea; he merely states that his family advised him *after* his sentence about parole. A review of the initial testimony of the Petitioner reveals that he spoke with his family about an appeal after his guilty plea, and "they (the family) were saying I would have a parole something. It was a parole date somewhere into it and I didn't ... get anything on that." *Id.* at 48.

At the PCR hearing, the Petitioner called counsel John Delgado as a witness. Likewise, counsel Delgado's testimony and the questions by the Petitioner's PCR counsel did not address any parole issue on direct or cross-examination concerning advice prior to the guilty plea. Then, on re-direct examination, counsel Delgado testified that the 40 year sentence was a reasonable resolution of the case. The following exchange then occurred:

> Q. Are you aware of the fact that he's not eligible for parole?
> A. No, ma'am.
> Q. I'm Sorry.
> A. I thought 40 years he is eligible for parole, ma'am is he not?
> Q. Mr. Bing doesn't think that he's eligible for parole.
> A. I think he's eligible for parole if you get a numerical sentence, ma'am, 85% of that 40 years, he is eligible for parole.

PCR App. pp.98-99. Subsequently, co-counsel Michael Culler testified that he worked with counsel Delgado on the plea and felt that there was a good chance if they went to trial the Petitioner would get either life in prison without the possibility of parole or the death penalty. *Id.* at 123-25. Culler further testified that the Petitioner "got 40 years, which is not a great thing, but he does have the opportunity to get out at some point in time." *Id.* at 125-26. Then, the following exchange took place:

> Q. Would it surprise you if I said to you my client has been told that he has no possibility of being paroled?
> A. We'll he parole after 40 years, is what I meant to say - you know its day for day.
> Q. That's correct.
> A. As opposed to life without the possibility.

*Id.* at 126.

In reply testimony, the Petitioner testified that the court sentenced him to "forty years day for day, mandatory." PCR App. p.157. The following exchange then occurred:

> Q. What was your understanding before you received that sentence from your attorneys?
> A. That I would be eligible for a parole date.
> Q. And have you been told differently?
> A. Yes, ma'am.
> Q. What have you been told now.
> A. That I will have to do 40 years day for day.
> A. 100 %.
> Q. Had you known at an earlier time, at the time that you took your plea, would that have made a difference?
> A. Yes, ma'am.
> Q. Do you feel that your attorneys misled you, as far as that statement's concerned?
> A. Yes, ma'am.

*Id.* As such, the first time the Petitioner even made the allegation that he was misadvised about parole eligibility came during reply testimony following the direct and cross-examination of his

11

trial counsels. Significantly, the PCR Court assessing credibility and veracity of the witnesses declared:

> The allegation that the Applicant's guilty plea was rendered involuntary as the result of ineffective assistance of counsel is without merit. This Court finds that every aspect of the Applicant's testimony regarding the deficiencies of his counsels' representation was not credible.
>
> ***
>
> This Court finds that Applicant's testimony was not credible. Further, this Court finds that plea counsels' testimony was credible and this Court affords it great weight. This Court finds that the transcript and counsels' testimony shows that the Applicant understood the consequences of a guilty plea, his Constitutional rights, and the possible sentences . . . . Therefore, the Applicant's guilty plea was not rendered involuntary as a result of the ineffective assistance of counsel.

The PCR court's assessment must be given deference by this Court. *See Lovitt*, 403 F.3d at 178; *see also* 28 U.S.C. § 2254(e)(1) (protecting state courts' factual judgments unless disproved in federal court by "clear and convincing evidence"). Indeed, "federal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008).

Moreover, the Petitioner's own statements are self-defeating. First, at the guilty plea, the Court told him he had to assume that he would do his entire 40 year sentence if he pleaded guilty, and the Petitioner stated that he understood. This plea statement is given a presumption of truth under *Blackledge*. Second, in his PCR application and the opening testimony at the PCR hearing, the Petitioner makes no mention about parole eligibility inducing his guilty plea, but merely testifies that his family subsequently mentioned something about parole. Third, neither

counsel Delgado nor Culler testified that they ever advised Petitioner that he would be eligible for parole at any time. To the contrary, they were only asked whether they thought now that he would be eligible for parole; Delgado stated that he thought the Petitioner would have to do 85% of his sentence,[3] and counsel Culler stated that he would have to do 40 years day for day. As a result, the PCR Court rejected the Petitioner's belated factual assertion of ineffectiveness relating to parole eligibility as generally lacking credibility.

Having thoroughly reviewed the entire record, the Petitioner's objections, and the applicable law, the Court finds that the Petitioner has not shown that the state court proceeding "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Moreover, the Petitioner has failed to demonstrate that counsel's performance fell below an objective standard of reasonableness. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984). According great deference to the state court's findings of facts and determinations as to credibility, the Court finds that the Petitioner's guilty plea was made knowingly and voluntarily without any expectation of parole eligibility, and his ineffective assistance of counsel claim fails.

---

[3] Counsel Delgado's statement is consistent with the early release possibility of S.C. Code Ann. § 24-13-150. *See* S.C. Code Ann. § 16-3-20(A). However, individuals convicted of murder are not eligible for parole.

## V.

## Conclusion

Based on the foregoing, it is **ORDERED** that the Magistrate Judge's R&R is adopted and incorporated as modified herein, and the Respondent's Motion for Summary Judgment [Docket # 16] is **GRANTED**. It is **FURTHER ORDERED** that a certificate of appealability is **DENIED** because the Petitioner has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

Florence, South Carolina
May 28, 2010